No. 13795

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

MARGARETTE M. AYE, et al.,

        Plaintiffs and Appellants,

-vs-

ADOLPH FIX et al.,

        Defendants and Respondents.

---

Appeal from: District Court of the Sixteenth Judicial
        District,
        Honorable A. B. Martin, Judge presiding.

Counsel of Record:

    For Appellants:

        Lucas, Jardine, Monaghan, Miles City, Montana
        James P. Lucas argued and Thomas M. Monaghan argued,
         Miles City, Montana
        Patrick J. Kelly, Miles City, Montana
        Jerome J. Cate, Billings, Montana

    For Respondents:

        Gene Huntley argued, Baker, Montana
        R. W. Heineman, Wibaux, Montana

---

            Submitted:  March 10, 1978

            Decided: MAY 9 1978

Filed: MAY 1978

_Thomas J. Kearney_
                Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court:

Plaintiffs appeal from an order of the District Court, Carter County, assigning their state leased lands to defendant and granting him $20,590, less certain rentals, plus interest, during the time he was dispossessed from the state leased lands.

On January 28, 1961,Margarette Aye and John A. Aye, as administrators of the estate of Lester Aye, leased about 5,104 acres of land in Carter County, Montana, to Adolph Fix. This lease included the lease on the "school section", State Lease No. 49401, and provided for an annual cash rental of $18,000 payable in advance.

Also on January 28, 1961, Lona B. Aye, the widow of Lester Aye, leased 834 acres (referred to as the "Perso" place) to Adolph Fix. This lease provided for an annual rent of $1.00 payable in advance. Both leases expired on April 20, 1964.

In December 1963, while the leases were still in effect, Willis Aye (brother of Lester Aye, deceased, and husband of Lona Aye, Lester's widow) solicited Adolph Fix to buy the Perso place for $50 per acre. At trial Adolph Fix testified this was a high price for land at that time, but Willis Aye offered the school lease adjoining the Perso place if Fix would pay $50 per acre for the Perso place.

Adolph Fix further testified that he thought the school lease was owned by John Aye, so he received assurance from John Aye that the state lease would go with the Perso place. Fix stated he paid the $50 per acre, $41,718 total, only because the state lease was included as part of the consideration.

- 2 -

Fix received a deed to the Perso place but no assignment of the lease. At the trial, Willis Aye testified the reason he did not convey the state lease to Fix when he sold the Perso place was because it was in the Lester Aye estate, and he did not have the authority to convey it.

On January 3, 1964, shortly before the expiration of the first lease, another lease was entered into between John Aye and Adolph Fix. This lease, for the 5,000 acres other than the Perso place, was prepared by John Aye and contained the same language relative to the state lease as did the earlier lease, "together with lease on School lands." Fix testified that he objected to this language and reminded John Aye that he, Fix, was supposed to have the lease on the school lands. Fix also testified that Aye explained to him that he would get the state lease at the end of the term. Fix testified he accepted these assurances as a sufficient assignment of the lease. The 1964 lease also contained a provision granting Fix the first right to buy the leased premises or to meet any bid offered.

Fix paid the cost of the state lease to John Aye directly until Aye died in 1966. In 1967, Fix made lease payments to the state. The state objected to receiving payments from Fix because he was not the lessee of record. Fix testified that he then consulted with Willis Aye, personal representative for both the John Aye and the Lester Aye estates, and asked Willis Aye for the assignment of the state lease. Willis Aye told Fix that he would get the assignment, but for the time being he would have to settle for a sublease.

On March 18, 1970, Willis Aye, as administrator of the estate of John Aye, gave notice to Fix that the leasing agreement was terminated because "it is contemplated that said property

- 3 -

will be sold." The tenancy on the state lease was cancelled by letter from John R. Carr dated February 12, 1971. A further notice to quit was given by Willis Aye, "Agent for the Aye family" on February 3, 1971, "to notify you that the Aye ranch * * * has been sold."

The Aye family specifically assigned the state lease to the buyers, Ralph and Frances Bruski. Fix refused to vacate the state leased land and the present litigation ensued. The trial court ruled Fix was the owner of the state lease by virtue of an oral agreement between Fix and John Aye that the state lease land would be assigned as part of the Perso place land sale.

Plaintiffs raise the following issues on appeal:

1. Does the statute of frauds bar testimony of an alleged oral agreement to sell or assign a state lease when written lease agreements specifically refer to a sublease of the state leased lands?

2. Is a sale or assignment of a state lease a transfer of real property which must be in writing to be valid under the statute of limitations?

3. Was the alleged oral agreement for the sale or assignment of the state lease barred by the section 93-2604, R.C.M. 1947, statute of limitations?

4. Did John Aye or Willis Aye have the legal authority to sell or assign the state lease to Adolph Fix?

5. Did Adolph Fix waive his right in state lease No. 49401 when he failed to exert any preference at the time the lease was up for renewal?

6. May an oral agreement to sell or assign a state lease be made without state approval?

We shall discuss only issues 1 and 2, since they are dispositive of this appeal.

- 4 -

Evidence relating to any oral agreements between the parties should have been excluded under the statute of frauds, since the parties' agreement had been reduced to writing. Montana law is clear that evidence of oral representations, relating directly to the subject matter of a contract, is not admissible to add to or alter the provisions of a written contract.

In Hosch v. Howe, (1932), 92 Mont. 405, 410, 16 P.2d 699, 700, this Court said:

> "' * * * The chief and most satisfactory index is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element.'"

In the instant case there are three specific written agreements which are totally inconsistent with the claim of Adolph Fix that State Lease No. 49401 was sold or assigned to him. The first written document is the deed of December 26, 1963, which represented the Perso property purchase from Willis and Lona Aye, that Fix claims transferred to him the Aye interest in the state lease. The deed itself, however, does not mention State Lease No. 49401, and it does not transfer that lease to Adolph Fix. The second written document is the January 3, 1964 lease agreement between John Aye and Adolph Fix. Fix signed this agreement which contained specific references to the state lease as land which Fix would leave from Aye. If Fix had purchased an assignment of the state lease when he bought the Perso place in 1963, he would obviously have no cause to pay money to lease his own property from John Aye in 1964.

- 5 -

The third written document is the sublease entered into between Willis Aye, as administrator of the John Aye estate, and Adolph Fix. This sublease clearly refers to State Lease No. 49401, and clearly provides that Fix shall sublease from Aye the very same lease which Fix contends had been sold or assigned to him prior to December 26, 1963. This sublease was signed by Fix on November 30, 1967.

Thus, because the alleged oral representations claimed by Adolph Fix to have been made to him by Willis and John Aye were dealt with in at least two of the three written agreements, all such parol testimony varying the terms of the written documents was inadmissible being barred by the statute of frauds.

Furthermore, the alleged oral agreement for the sale or assignment of State Lease No. 49401 is barred by the statute of frauds since it involves an agreement to transfer an interest in real property. Such agreements are required by sections 13-606 and 93-1401-7, R.C.M. 1947, to be in writing.

State Lease No. 49401 is an interest in real property or lands. "Of course, the execution of a lease of land operates as a transfer of an interest in that land, whether the specified term is long or short." 2 Corbin Contracts, §402.

This Court in Rider v. Cooney, (1933), 94 Mont. 295, 307, 308, 23 P.2d 261, stated:

> "An estate for years has been held by this court to be an interest in land. * * *
>
> "* * * When a lease is granted upon the public lands of the state, an interest or estate in the lands has been alienated, and therefore the leasing of the lands of the state for a term of years is the disposal of an interest or estate in the lands * * *."

See: Sections 67-502(3) and 67-506, R.C.M. 1947.

The District Court relied on O'Neill v. Wall, (1936), 103 Mont. 388, 62 P.2d 672, for the conclusion that leases are personal property rather than real property. O'Neill, however, has never been followed by this Court insofar as it seems to say that a lease is not a chattel real or an interest in real estate or land. The ruling in Wheeler v. McIntyre, (1918), 55 Mont. 295, 175 P. 892, that a lease is an interest in land and chattel real has been followed in a series of Montana cases. See: Brubaker v. D'Orazi, (1947), 120 Mont. 22, 34, 179 P.2d 538; Standard Oil Co. v. Idaho Community Oil Co., (1934), 98 Mont. 131, 37 P.2d 660; Williard v. Federal Surety Co., (1932), 91 Mont. 465, 471, 8 P.2d 633.

The District Court, in its conclusions of law No. I, incorrectly found that the alleged oral contract to convey the state lease was removed from the statutue of frauds for three other reasons: "(1) the oral agreement was partially executed by the execution of the deed conveying the Perso Place". Section 13-607, R.C.M. 1947, provides that the execution of a written contract supersedes all oral negotiations concerning its matter which preceded the execution of the instrument; "(2) the possession by Fix of the state leased lands." Every lessor would be subject to claims made by lessees such as Fix, if mere possession of leased lands under specific written agreements would allow the lessee to claim exemption from the requirements of transfers in writing. The statute of frauds is specifically designed to avoid this type of transaction; "(3) by the subsequent agreements subleasing the state lease which subleases were given in lieu of an assignment because of the circumstances described in the findings of fact." The written agreements that specifically provide for subleasing, all entered into after the

purported sale or assignment of the state lease, however, do not in any way support the alleged oral promise there would be an assignment or sale of the state lease. Furthermore, Fix could give no reasonable explanation why he would sign an agreement giving him the first right of purchase of the Ayes' rights in the state lease if he in fact was already the owner of the lease upon purchase of the Perso place.

Fix relies on Saling v. Flesch, (1929), 85 Mont. 106, 110, 111, 277 P. 612, for the position that "Whether the instrument * * * was an assignment or a sublease depends upon the intention of the parties." In this case, the parties in their 1964 and 1967 agreements, specifically referred to a "sublease" rather than an "assignment" of the state leased land. Moreover, John Aye reserved the right to reenter the property if Fix failed to fulfill the terms of the lease agreement, a factor which this Court has found indicative of a sublease of lands. Saling v. Flesch, supra.

The written agreements of the parties clearly indicate there was no sale or assignment of the entire Aye interest in the state leased lands to Fix. The District Court judgment in favor of Fix is reversed, and the cause is remanded to the District Court with orders to enter judgment for plaintiffs and to determine damages due them.

Justice

- 8 -

We Concur:

_Frank I. Haswell_
Chief Justice

_Gen B Daly_

_Daniel J. Shea_
Justices.