DA 11-0520

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 75

PROGRESSIVE DIRECT INSURANCE
COMPANY,

       Interpleader Petitioner
       and Plaintiff,

   v.

CASEY MICHAEL STUIVENGA,

       Interpleader Respondent,
       Defendant and Appellee,

   and

BRITNI ROSE EVANS,

       Interpleader Respondent,
       Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                    In and For the County of Powell, Cause No. DV-09-37
                    Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Wade J. Dahood, Jeffrey W. Dahood, Knight, Dahood, Everett & Sievers,
              Anaconda, Montana

       For Appellee:

              John C. Doubek, Doubek, Pyfer & Fox, LLP, Helena, Montana

Submitted on Briefs:  February 15, 2012

Decided:   April 10, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Casey M. Stuivenga and Britni R. Evans were injured in a single-vehicle accident. Stuivenga and Evans were the only occupants of the vehicle—a 2006 Dodge Ram pickup owned by Stuivenga. Stuivenga claimed that Evans was driving at the time of the accident and was liable to Stuivenga for his injuries. Conversely, Evans claimed that Stuivenga was driving and was liable to Evans for her injuries. They both sought proceeds available under a Montana automobile insurance policy issued to Stuivenga by Progressive Direct Insurance Company. The policy's per person liability limit was $25,000. Progressive determined that Evans' and Stuivenga's competing claims could not be settled in an amount equal to or less than this limit.

¶2     Progressive commenced an interpleader action in the Third Judicial District Court, Powell County, and deposited the $25,000 with the court pursuant to § 25-8-101, MCA. Progressive asked the court to determine to whom the funds should be issued—Stuivenga or Evans. Ultimately, a jury found that Evans was the driver at the time of the accident. The District Court denied Evans' motion for a new trial and entered an order releasing the $25,000 to Stuivenga. Evans now appeals.

¶3     There are two issues on appeal:

    1. Should this appeal be dismissed as moot?

    2. Did the District Court manifestly abuse its discretion in denying Evans' motion for a new trial?

We conclude that this appeal is not moot, and we affirm the District Court's order denying the motion for a new trial.

3

## BACKGROUND

¶4 The accident occurred October 11, 2008, at around 4:00 a.m. on U.S. Highway 12 between Helena and Garrison. Stuivenga and Evans had attended a bull-riding event in Helena the previous evening and had spent time with friends after the event, and were on their way back to Deer Lodge. Near milepost 10 on Highway 12 (within Powell County), Stuivenga's pickup drifted across the roadway, struck the end of a guardrail on the left-hand side of the road, slid into the ditch, and overturned. The pickup came to rest on the passenger side, at almost a 90-degree angle, in a group of trees. There were no vehicle markings on the roadway indicating corrective or evasive maneuvers; it appeared the driver had simply fallen asleep. Neither Stuivenga nor Evans was wearing a seatbelt. They both survived the accident but were hospitalized for several days.

¶5 Evans later recalled that she had been driving Stuivenga's pickup when they departed the Helena area, but she had no memory of the accident. She claimed that she had pulled over to take a nap on the outskirts of Helena, and she had a vague memory of switching positions with Stuivenga (such that he became driver and she became passenger), but she could not recall precisely where and how that transpired. Her first recollection after the accident was of a doctor, nurse, or emergency medical technician (EMT) using scissors to cut off her clothes in order to treat her injuries. But even that memory was foggy, and Evans admitted that she did "not recall most of that time," including some of the time spent in the hospital. EMT records reflect that Evans was conscious and alert after the accident and may have admitted to being the driver. The preliminary report of the investigating officer identifies Evans as the driver, as do various

4

hospital records. Stuivenga's parents visited Evans in the hospital and later reported that she had apologized to them for the accident and had told them she fell asleep while driving home. Later, however, Evans became convinced that Stuivenga had been driving. About a week after the accident, she had conversations with the investigating officer and one of her treating physicians, both of whom expressed the view that Stuivenga was the driver. When subsequently questioned by Stuivenga's counsel about her admissions to Stuivenga's parents and about the various EMT and hospital records indicating she was the driver, Evans stated that she could not recall having admitted this to anyone. She opined that if she did tell people that she was the driver, it was because someone had "suggested" it to her and she simply repeated it to others "subconsciously."

¶6     Stuivenga did not remember the accident itself. He did recall several surrounding events, however. He remembered that Evans was driving. He reported that he was lying on the pickup seat asleep, with his head toward Evans, when the accident occurred. He stated that when he woke up, the pickup was on its side and he was standing on the inside of the passenger door, leaning against the passenger seat. Evans was lying in the window space of the passenger door next to where Stuivenga was standing. Stuivenga heard Evans shivering and moaning, and he thus placed a blanket over her. He looked around the cab and found a mobile phone. He then crawled out the back window, climbed up to the roadway, and called 911. He tried to flag down three passing motorists, but none of them stopped.

¶7     As noted, Stuivenga and Evans made separate claims against Progressive for their injuries. After Progressive deposited the $25,000 per person liability limit in the District

Court's registry, the court dismissed Progressive from this action with prejudice. Evans then filed a motion for summary judgment on the question of who was driving the pickup. The District Court denied the motion, observing that the parties had presented conflicting evidence which warranted submission of the question to a jury.

¶8 Evans and Stuivenga testified at trial, providing their respective versions of the accident. Each argued to the jury that the other had a motive to deny being the driver. Of relevance to the second issue raised in this appeal, Evans sought to establish that Stuivenga had a special type of automobile insurance which he was required to carry because he had two prior convictions of driving under the influence of alcohol or drugs (DUI). Evans' theory was that the premium for this insurance is "very heavy" and, thus, if Stuivenga "were to have another DUI he might be in a situation where he wouldn't be able to get any insurance. So he had a lot of motivation to try and say that [Evans] was the driver, it wasn't him."

¶9 Stuivenga objected when Evans raised the two prior DUIs during her examination of him at trial. The District Court held a conference outside the jury's presence to discuss the matter. The court noted that the evidence of the prior DUIs could cut both ways: on one hand it could undermine Stuivenga's credibility by showing he had a motivation after the accident to say that Evans was the driver, but on the other hand it could bolster his credibility by showing he had a motivation before the accident to have Evans do the driving that night (since Stuivenga admittedly had drunk quite a bit during the course of the evening prior to the accident). In any event, the court initially expressed the view that any probative value of the prior DUIs was substantially outweighed by the potentially

6

prejudicial effect. *See* M. R. Evid. 403. After further discussion, however, the court decided to overrule Stuivenga's objection

> with the understanding that there is an agreement that there is to be no further mention during the course of the trial of the fact of Mr. Stuivenga's prior DUI's, except for whatever argument there might be during closing argument, which will be limited to the issue of whether Mr. Stuivenga had a motivation to, to say that [Evans] was the driver rather than himself.

The intent and effect of this ruling was to allow Evans to argue, consistently with her counsel's stated purpose for introducing the evidence, that Stuivenga had a motivation to lie, but at the same time to prevent unfair prejudice to Stuivenga.

¶10     Separate from the *prior* DUI convictions, Stuivenga was charged with DUI arising out of the October 2008 accident. Upon motion of the Powell County Attorney, this charge was dismissed with prejudice prior to trial in the instant case. Stuivenga elicited testimony of this fact from Evans during his cross-examination of her, without objection by Evans. During his summation, however, when Stuivenga referred to the dismissed DUI charge, Evans objected that there had been no evidence on this point (an incorrect assertion, given that Evans herself had testified to it) and that any references to DUIs were prohibited by the District Court's earlier ruling (also an incorrect assertion, given that the ruling pertained to *prior* DUI convictions, not the dismissed 2008 charge). The District Court held a brief discussion at the bench and then stated: "Alright, what I'm going to do is to send you guys back and you'll go on with your closing. And not another word about it." The court did not specifically sustain (or overrule) Evans' objection. Evans did not request a cautionary instruction to the jury, nor did she request permission to address Stuivenga's remarks in her rebuttal closing argument.

7

¶11 The jury rejected Evans' claim that Stuivenga had been driving. The jury rendered its verdict on May 24, 2011, declaring that Evans was the driver of the vehicle involved in the accident. Evans filed a motion for a new trial under Rule 59 of the Montana Rules of Civil Procedure. She claimed that Stuivenga had violated the District Court's order regarding DUIs when he referred in his summation to the fact that the October 2008 DUI charge had been dismissed. Evans argued that this "improper argument" had prejudiced the jury against her and prevented her from receiving a fair trial. Evans reasoned that "[t]he Jury was told by Stuivenga's Counsel that the issue as to who was driving had already been decided by the County Attorney of Powell County." Evans also claimed that Stuivenga's argument was improper because it introduced facts not in evidence.

¶12 The District Court entered an order on August 12, 2011, denying the motion for a new trial. The court observed that Evans was confusing the issues and facts pertaining to the *prior* DUI convictions versus the dismissed DUI charge arising out of *this accident*. Stuivenga's reference to the dismissed 2008 DUI charge did not violate the court's order regarding his prior DUI convictions. In addition, the court observed, the record reflects that during cross-examination of Evans there was testimony revealing the DUI charge and dismissal. "The motion for new trial in this regard is, therefore, not well taken." Finally, the court stated that it was confident each of the parties had received a fair trial. "The case was well tried and the parties were permitted to and they did present their theories of the case to the jury. Ample evidence was presented to the jury from which they could reasonably conclude, as they did, that Britni Evans was the driver of the vehicle at the time that the accident took place."

8

¶13 On or about August 16, 2011, Stuivenga's counsel provided the District Court with a proposed order directing the Clerk of the District Court to pay the interpleaded sum of $25,000 to Stuivenga. Stuivenga's counsel provided a copy of the proposed order to Evans' counsel. Evans did not file an objection. Nor did she request a stay pending the disposition of her Rule 59 motion or a stay pending an appeal. *See* M. R. Civ. P. 62; M. R. App. P. 22. The District Court signed the proposed order on August 23. Evans then filed her notice of appeal with this Court on September 1.

¶14 Stuivenga moved to dismiss this appeal as moot because the $25,000 has already been released to him. In response, Evans argued that satisfaction of a money judgment does not render an appeal moot. This Court noted that "the mootness question presented here is one of first impression and not settled by our previous decisions." We therefore determined to permit the appeal to proceed on its merits and directed the parties to provide further analysis of the mootness question in their briefs.

## DISCUSSION

¶15 ***Issue 1. Should this appeal be dismissed as moot?***

### I. Mootness Principles

¶16 The judicial power of Montana's courts is limited to justiciable controversies. *Plan Helena, Inc. v. Helena Regl. Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567; *Gateway Opencut Mining Action Group v. Bd. of County Commrs.*, 2011 MT 198, ¶ 16, 361 Mont. 398, 260 P.3d 133; *State v. Benn*, 2012 MT 33, ¶ 9, 364 Mont. 153, ___ P.3d ___. A justiciable controversy is one upon which a court's judgment will effectively operate, as distinguished from a dispute invoking a purely political,

9

administrative, philosophical, or academic conclusion. *Plan Helena*, ¶ 8. The central concepts of justiciability have been elaborated into more specific doctrines—namely, advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions—each of which is governed by its own set of substantive rules. *Plan Helena*, ¶ 8; *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881. At issue here is the question of mootness.

¶17 Mootness is the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). *Greater Missoula*, ¶ 23. Thus, if the issue presented at the outset of the action has ceased to exist or is no longer "live," or if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position, then the issue before the court is moot. *Greater Missoula*, ¶ 23; *Gateway Opencut*, ¶ 16; *Benn*, ¶ 9. Because the constitutional requirement of a "case" or "controversy" contemplates real controversies and not abstract differences of opinion or moot questions, courts lack jurisdiction to decide moot issues insofar as an actual case or controversy no longer exists. *Greater Missoula*, ¶ 23. Hence, mootness is a threshold issue which we must resolve before we may address the substantive merits of a dispute. *Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶ 23, 358 Mont. 193, 244 P.3d 321.

¶18 Stuivenga argues that, due to an intervening event or change in circumstances, this Court is unable to grant effective relief. Specifically, he contends that it is impossible to

grant effective relief because he has already used the $25,000 to pay the medical bills he incurred as a result of the accident. Stuivenga asserts that it would be wrong to force the ambulance services and emergency medical providers to pay back the monies and await the results of further proceedings in this case. He faults Evans for not taking some action to hold and maintain the funds in the District Court's registry pending an appeal.

¶19　In response, Evans argues that the medical providers would not have to return the monies which Stuivenga has paid to them. Rather, Evans contends that if she prevails on this appeal (i.e., if this Court reverses and remands for a new trial), and if she prevails at a second trial in the District Court, then Stuivenga, not the medical providers, will be liable for the $25,000. Evans maintains, therefore, that this Court can grant effective relief.

¶20　As will be seen in the ensuing discussion, our jurisprudence concerning the mootness of appeals, where the underlying judgment has been satisfied, has followed a somewhat tortuous path. We therefore undertake herein to reconcile our cases and to articulate clear guidelines on the subject.

## II. Restitution as a Form of Relief

¶21　At the outset, we note that there is substantial support for Evans' restitution theory. It is a "well established" principle that one has a "right to recover what one has lost by the enforcement of a judgment subsequently reversed." *Baltimore & Ohio R.R. Co. v. United States*, 279 U.S. 781, 786, 49 S. Ct. 492, 493 (1929); *accord Anderson v. Border*, 87 Mont. 4, 11, 285 P. 174, 177 (1930); *Nepstad v. East Chicago Oil Assn.*, 96 Mont. 183, 190-91, 29 P.2d 643, 646 (1934); *Waggoner v. Glacier Colony of Hutterites*, 131 Mont. 525, 528-29, 312 P.2d 117, 118-19 (1957); *Reil v. State Compen. Mut. Ins.*

11

*Fund*, 254 Mont. 274, 278, 837 P.2d 1334, 1336-37 (1992); *Crail Creek Assocs., LLC v. Olson*, 2008 MT 209, ¶ 42, 344 Mont. 321, 187 P.3d 667.  This is the longstanding rule of the *Restatement*.[1]  Under *Restatement (First) of Restitution* § 74 (1937), "[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess."  Likewise, under *Restatement (Third) of Restitution and Unjust Enrichment* § 18 (2011), "[a] transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment."

¶22    In *Hansen v. Hansen*, 134 Mont. 290, 295, 329 P.2d 791, 793-94 (1958), this Court favorably cited and applied *Restatement (First) of Restitution* § 74.  The Court also quoted similar principles from Am. Jur. *Appeal and Error* § 1242:

> "[A]ll proceedings taken under the judgment are dependent for their
> validity upon the judgment being sustained.  When it is reversed or set

---

[1] This Court has, on numerous occasions, cited sections of the *Restatements* as persuasive authority, or has adopted certain sections outright.  *See e.g. Brandenburger v. Toyota Motor Sales, U.S.A., Inc.*, 162 Mont. 506, 513-14, 513 P.2d 268, 272-73 (1973); *First Bank (N.A.)-Billings v. Clark*, 236 Mont. 195, 206, 771 P.2d 84, 91 (1989); *Harman v. MIA Serv. Contracts*, 260 Mont. 67, 72, 858 P.2d 19, 22-23 (1993); *Crisafulli v. Bass*, 2001 MT 316, ¶ 23, 308 Mont. 40, 38 P.3d 842; *Leichtfuss v. Dabney*, 2005 MT 271, ¶¶ 39-42, 329 Mont. 129, 122 P.3d 1220; *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 36, 338 Mont. 259, 165 P.3d 1079; *Emmerson v. Walker*, 2010 MT 167, ¶ 23, 357 Mont. 166, 236 P.3d 598; *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶¶ 21, 25, 36, 37, 363 Mont. 366, ___ P.3d ___; *Burley v. Burlington N. & Santa Fe Ry. Co.*, 2012 MT 28, ¶¶ 83-89, 364 Mont. 77, ___ P.3d ___; *Patterson Enters., Inc. v. Johnson*, 2012 MT 43, ¶¶ 39-40, 50, 364 Mont. 197, ___ P.3d ___.

aside, the law raises an obligation against the party to the record who has received the benefit thereof to make restitution to the other party of any and all money or property received under it, or of its value or equivalent, in money in case the recipient asserts title to the thing received or has converted it to his own use. In other words, a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he had lost thereby, but no further liability should in any case be imposed."

*Hansen*, 134 Mont. at 294-95, 329 P.2d at 793 (emphasis omitted); *accord Aye v. Fix*, 192 Mont. 141, 147, 626 P.2d 1259, 1263 (1981).

¶23    Of relevance to the issue at hand, the *Restatement* applies these principles where funds received in satisfaction of a judgment are in turn paid by the judgment creditor to a bona fide payee. If the judgment is subsequently reversed, the judgment debtor has a restitution claim against the judgment creditor. The bona fide payee, on the other hand, holds the payment free of the judgment debtor's restitution claim. *Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. g. Thus, for example,

> A sues B and obtains a money judgment of $150,000, which B pays. A pays $50,000 of this amount to discharge an obligation to Bank, a bona fide payee (§ 67). A's judgment against B is later set aside on the ground that it was based on a claim that A knew to be fraudulent. B is entitled to restitution from A of $150,000 with interest from the date of payment. B has no claim against Bank.

*Restatement (Third) of Restitution and Unjust Enrichment* § 18 illus. 15. This principle also applies to situations where property of a judgment debtor is sold on execution and the underlying judgment is thereafter set aside. The judgment debtor has a restitution claim against the judgment creditor, but not against a bona fide purchaser of the property (unless the underlying judgment is void *ab initio*). *Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. f. Likewise, where the underlying action is a contest over

13

title to real estate, and the party who prevails at trial then sells the property to a bona fide purchaser, after which the underlying judgment is set aside, the opposing party has a restitution claim against the prevailing party or, depending on the doctrine of lis pendens, may instead have a claim against the purchaser. *Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. g, illus. 12; *Fox v. Clarys*, 227 Mont. 194, 196, 738 P.2d 104, 105 (1987) (explaining the doctrine of lis pendens).

¶24 Restitution may be ordered in connection with the reversal, either by the appellate court or by the trial court on remand, or may be pursued in an independent action. *See Burgess v. Lasby*, 94 Mont. 534, 550, 24 P.2d 147, 153 (1933); *Hansen*, 134 Mont. at 295, 329 P.2d at 793-94; George E. Palmer, *The Law of Restitution* vol. II, § 9.9(b), 290 (Aspen 1978); *Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. b; *see also e.g. Aye*, 192 Mont. at 147-48, 626 P.2d at 1263; *Reil*, 254 Mont. at 278, 837 P.2d at 1336-37. But what is important, for purposes of this discussion, is the fact that restitution may be a form of relief available to an appellant upon obtaining a reversal of a judgment on appeal. This, in turn, bears on the question whether the appeal is moot.

### III. Mootness Jurisprudence

¶25 Turning now to our mootness jurisprudence, this Court's cases addressing the mootness of appeals (where the underlying judgment has been satisfied) have relied on differing, and sometimes inconsistent, rationales. Although we have overruled some of the cases in an effort to eliminate "confusion," the law in this area still remains unsettled. It is helpful, therefore, to provide a comprehensive picture of where things stand, in order that we may clarify the rules to be followed.

14

## A. Academic Questions; Futility of Rendering a Decision

¶26 The foundational precedent is *State ex rel. Begeman v. Napton*, 10 Mont. 369, 25 P. 1045 (1891). A juror (Begeman) applied to the district court for a writ of mandamus requiring Napton, clerk of the district court, to issue Begeman a certificate of his mileage and attendance as a trial juror in that court. The district court ordered the writ to issue, and Napton appealed to this Court. Meanwhile, Napton obeyed the writ and issued the certificate. Given these circumstances, we observed that

> [a] judgment of any kind from this court would present a peculiar result. An affirmance would be to direct the District Court to issue a writ, which that court has already issued, and which has been obeyed. A reversal would be to say to the lower court, you may not order the clerk to do that which he has already fully performed. It is apparent that there is no controversy before us. The case is fictitious.

*Begeman*, 10 Mont. at 370, 25 P. at 1046. Napton acknowledged that a decision from the Court would not affect *this case*. He explained that he was pursuing the appeal only for the purpose of having this Court provide guidance for the future. We refused, however, to depart from the rule that "courts will hear only genuine controversies, and will not tender advice upon matters not in litigation." *Begeman*, 10 Mont. at 370, 25 P. at 1046. We accordingly dismissed the appeal.

¶27 To the same effect is *Snell v. Welch*, 28 Mont. 482, 72 P. 988 (1903). There, the defendants (members of the textbook commission) filed an appeal from an order of the district court enjoining them from letting contracts under an act of the Legislature which provided for a uniform series of textbooks for use in public schools. The parties then settled their differences and the contracts were let. Citing *Begeman*, this Court dismissed

15

the appeal, observing that "[t]here is nothing in this case now for us to decide. It has been disposed of by the parties themselves pending the appeal." *Snell*, 28 Mont. at 483, 72 P. at 988.

¶28 Likewise, in *State ex rel. Hauswirth v. Beadle*, 90 Mont. 24, 300 P. 197 (1931), Hauswirth applied for a writ of prohibition to restrain the Butte mayor and city council from enacting an ordinance that would permit Montana Power Company to supply natural gas to the city's inhabitants. The district court denied the application, and Hauswirth did not request a stay. Thereafter, the city council enacted and the mayor approved the ordinance. Accordingly, this Court held that the issue had become moot, since nothing would be achieved by reversing the district court and directing it to issue the writ. "Under the circumstances the writ of prohibition cannot undo that which has been done." *Hauswirth*, 90 Mont. at 27, 300 P. at 198.

¶29 In *State ex rel. Brass v. Horn*, 36 Mont. 418, 93 P. 351 (1908), Brass was charged in the police court of Helena with disturbing the peace. When the police judge (Horn) denied Brass' request for a transfer of the cause to the nearest justice of the peace, Brass applied to the district court for a writ of mandamus to compel the transfer. The district court granted the writ, and Horn appealed. Yet, on the same day that he filed his appeal, Horn also complied with the district court's mandate. As a result, this Court dismissed the appeal as moot. The Court observed that "it would serve no useful purpose to reverse the judgment appealed from, because the cause was, immediately upon the issuance of judgment and service of the writ, transferred to the justice, and has doubtless long since been disposed of." *Brass*, 36 Mont. at 420, 93 P. at 352.

¶30	A similar situation arose in *Johnson v. Rosenbeck*, 141 Mont. 72, 375 P.2d 221, (1962). There, the district court (in a mandamus proceeding) found that the judgments of conviction entered against Johnson in the police court of Superior were null and void. Thus, the district court ordered the police judge (Rosenbeck) to return the fines Johnson had paid. The district court also stated, however, that it was not prohibiting the Town of Superior from filing proper charges against Johnson. On the parties' appeals to this Court (Rosenbeck from the district court's order; Johnson from the denial of his request for damages and attorney's fees), we noted that sworn complaints had since been filed and the prosecution against Johnson instituted anew in the police court.

> Thus, the [district court] judgment anulling the previous proceedings in the police court was recognized and carried into effect. A reversal of the district court judgment would be futile. The ostensible effect of the reversal would be to reinstate the original judgments entered by the police judge, but that result is now impossible because the original judgments have been superseded and abrogated by new proceedings in the police court.

*Johnson*, 141 Mont. at 74-75, 375 P.2d at 223. We accordingly dismissed Rosenbeck's appeal. *Johnson*, 141 Mont. at 75, 76, 375 P.2d at 223, 224.

¶31	The foregoing cases involved the grant or denial of injunctive-type relief where subsequent events mooted the original dispute and left this Court unable to issue anything more than an advisory opinion on the matter. A slightly different situation arose in *Fox v. Hacker*, 68 Mont. 413, 220 P. 749 (1923). There, Fox brought an action against Hacker to enforce a contract for the sale of land. During the pendency of the action, Hacker conveyed the land in question to Fox, and Fox paid the purchase price therefor with the exception of a portion of the price that was in dispute. The district court determined that

Hacker was entitled to the disputed amount, and Fox appealed. On appeal, however, Fox argued that the district court's judgment should be reversed because the instrument in question was not a valid contract in the first place. Noting difficulty in understanding Fox's position, this Court concluded that "no practical result could follow" from a decision on Fox's contention. *Fox*, 68 Mont. at 418, 419, 220 P. at 750, 751.

> [W]hether the instrument referred to in the complaint was a valid contract, subject to enforcement as such in an action for its specific performance, has become a moot question, interesting perhaps from an academic point of view, but its decision could not result in any practical relief to the parties to this suit, since . . . they have by stipulation consummated the deal contemplated in the instrument, irrespective of any defects which may have existed therein.

*Fox*, 68 Mont. at 418, 220 P. at 750. We acknowledged that the parties had agreed in their stipulation "that the case shall proceed as though the land had not been conveyed and no part of the purchase money paid." But we held that the parties to litigation cannot by stipulation present a moot question to this Court as the basis of a judicial decision. *Fox*, 68 Mont. at 419-20, 220 P. at 751.

## B. Satisfaction of Judgment vis-à-vis Effective Relief

¶32    The next case, *In re Black's Estate*, 32 Mont. 51, 79 P. 554 (1905), has been cited in subsequent cases on the question of mootness, but a careful reading reveals that the decision is grounded on principles of waiver—a distinction that is important to make for reasons discussed below. The deceased's son and daughter appealed from the district court's decree of distribution. Yet, prior to the appeal, the son and daughter received the shares allotted to them by the decree and gave the estate administrator receipts in full therefor. As a result, the administrator moved to dismiss the appeal on the ground that

18

the son and daughter had accepted the provisions of the decree and voluntarily satisfied the same. This Court granted the motion, observing that "[t]he right to accept the fruits of a judgment, and at the same time to prosecute an appeal from it, are not concurrent. On the contrary, they are wholly inconsistent rights. The election of one necessarily excludes the enjoyment of the other." *Black's Estate*, 32 Mont. at 53, 79 P. at 555. The Court recognized that there are exceptions to this general rule, but determined that none of them applied here. The appeal had been taken generally, and the purpose sought was a reversal of the district court's judgment as a whole—something the son and daughter could not do, having already accepted the fruits of that judgment. *Black's Estate*, 32 Mont. at 54-55, 79 P. at 555-56. The Court also noted that the receipts executed by the son and daughter reflected an intention to acknowledge receipt in full of all the distributive shares to which they were entitled in the estate and to release the administrator of liability. *Black's Estate*, 32 Mont. at 56, 79 P. at 556. Essentially, the son and daughter had agreed that the decree was to be final. Lastly, one other facet of *Black's Estate* must be mentioned. In the course of its analysis, the Court posited that "[w]hen a judgment has been paid, it has passed beyond review; the satisfaction of it being the end of the proceeding." *Black's Estate*, 32 Mont. at 53, 79 P. at 555. This categorical rule was repeated in several subsequent cases. However, as will be seen, this Court ultimately repudiated the rule as an incorrect statement of the law.

¶33 The next two cases are significant in that the Court reached opposite conclusions on the question of mootness despite the similar procedural postures of the cases—the distinction being the involvement of third-party interests in the moot case. First, in *State*

19

*ex rel. Kurth v. Grinde*, 96 Mont. 608, 32 P.2d 15 (1934), the district court issued a writ of mandate commanding that Kurth be reinstated as Great Falls water registrar. The existing water registrar (Pierse) complied with the writ, but still maintained an appeal to this Court. We allowed the appeal. We noted that, as a general rule, once a party has complied with the commands of a writ of mandate, the question whether the writ should have been granted will not be reviewed. *Kurth*, 96 Mont. at 611, 32 P.2d at 16. But here, we reasoned, the underlying question is "who has the title to the office in question," and if that person is Pierse, then this Court may compel Kurth to surrender to Pierse all of the books, papers, and insignia belonging or appertaining to that office. *Kurth*, 96 Mont. at 612-13, 32 P.2d at 16. "We may exercise the right of compelling restitution by our own mandate or direct the lower court to do so"; hence, "the fact that the order or judgment of the district court has been complied with does not warrant us in dismissing the appeal." *Kurth*, 96 Mont. at 613, 32 P.2d at 16.

¶34    In the second case, *State ex rel. Hagerty v. Rafn*, 130 Mont. 554, 304 P.2d 918 (1956), the district court issued a writ of mandamus compelling the Montana Liquor Control Board to issue beer and liquor licenses to parties who had tribal permits to engage in the liquor business on the Blackfeet Indian Reservation. An application was made to this Court for a stay pending the outcome of an appeal, but this Court was in summer recess at the time. The Board, therefore, issued the licenses "under protest," while still maintaining an appeal to this Court. In contrast to *Kurth*, however, we dismissed the appeal as moot. We acknowledged that the Board's compliance with the writ had been involuntary. We also rejected the notion that "when a judgment has been

20

paid it has passed beyond review, the satisfaction of it being the end of the proceeding."

Besides the fact that this statement was "dictum" in *Black's Estate*, we pointed out that the statement "is not always true in every case even of a judgment for money damages when payment is voluntarily made and generally speaking is clearly an incorrect statement of the law when payment or performance otherwise is involuntary." *Hagerty*, 130 Mont. at 557, 304 P.2d at 919-20. Nevertheless, whether the Board obeyed the writ voluntarily or involuntarily, we concluded that our review of the issues would be "to no purpose" and that a reversal would be "without effect"—i.e., the appeal was moot— because the persons named in the issued licenses had since

> acted upon the permission given them thereby to dispense liquors and beer at Browning. Presumably each has a tavern, has invested capital in his respective enterprise as he was lawfully entitled to do, and has acquired patrons and customers, and has what is commonly known as an established and going business, all of which is of some value. If the appellants were to prevail in this action and upon a reversal we were to order the board and court below to cancel out the licenses now outstanding, the status quo of the parties to this litigation could not be restored as it was when the judgment of the lower court was entered.

*Hagerty*, 130 Mont. at 557-58, 304 P.2d at 920. We distinguished *Kurth* on the ground that, unlike there, we could not here "effect restitution" upon a reversal of the district court's writ. *Hagerty*, 130 Mont. at 558, 304 P.2d at 920; *see also Gill v. Rafn*, 133 Mont. 505, 509-10, 326 P.2d 974, 976 (1958) (discussing this facet of *Hagerty*).

¶35   This brings us to the most problematic case in this line of authority: *Gallatin Trust & Sav. Bank v. Henke*, 154 Mont. 170, 461 P.2d 448 (1969). The case has since been overruled, but certain aspects of the decision are pertinent to the instant discussion and, thus, should be noted here. As an initial matter, the *Henke* Court consumed several

pages addressing the merits of Henke's appeal, 154 Mont. at 172-76, 461 P.2d at 449-51, only then to observe that "[w]hile we have heretofore discussed the merits of this case, we choose to discuss the motion to dismiss the appeal," 154 Mont. at 176, 461 P.2d at 451. This approach, of course, puts the proverbial cart before the horse because, as stated above, mootness is a *threshold* issue which must be resolved *before* we may address the substantive merits of a dispute. *See* ¶ 17, *supra*. The *Henke* Court then proceeded to dismiss the appeal as moot, 154 Mont. at 177, 461 P.2d at 452, thereby rendering the entire preceding discussion of the merits of the appeal dictum.

¶36　　In concluding the appeal was moot, the *Henke* Court cited the facts that Henke had not posted a supersedeas bond, that this Court had denied her application for a stay of execution, and that the judgments against Henke had thereafter been satisfied. 154 Mont. at 177, 461 P.2d at 452. The Court purported to resurrect the rule that "[w]hen the judgment is paid it passes beyond review; its satisfaction ends the proceeding." *Henke*, 154 Mont. at 177, 461 P.2d at 451-52 (citing *Black's Estate*, 32 Mont. 51, 79 P. 554). Doing so was concededly in conflict with *Hagerty*'s criticisms of *Black's Estate*, a point that ultimately had to be resolved in later cases. First, in *Mont. Natl. Bank of Roundup v. Dept. of Revenue*, 167 Mont. 429, 539 P.2d 722 (1975), we rejected the Department of Revenue's reliance on *Henke* in support of the contention that the Bank's appeal was moot. We reaffirmed the "well recognized" rule that

> payment of a money judgment by the judgment debtor does not, by itself, render the cause moot for purposes of appeal. *State ex rel. Hagerty v. Rafn*, 130 Mont. 554, 304 P.2d 918, and cases cited therein. A defeated party's compliance with the judgment renders his appeal moot only where the compliance makes the granting of effective relief by the appellate court

impossible. *State ex rel. Begeman v. Napton*, 10 Mont. 369, 25 P. 1045; Anno. 39 A.L.R.2d 153, 179.

*Bank of Roundup*, 167 Mont. at 432-33, 539 P.2d at 724. We did not expressly overrule *Henke* in *Bank of Roundup*, but later did so in an Opinion and Order Denying Motion to Dismiss in *First Natl. Bank in Eureka v. Giles*, No. 86-195, 1986 Mont. LEXIS 979 (July 24, 1986). There, after discussing *Henke*, *Bank of Roundup*, and *Hagerty*, we adopted the rule that if a judgment is satisfied by an involuntary payment or performance, the appeal from the judgment is not thereby rendered moot.[2] *Bank in Eureka*, 1986 Mont. LEXIS 979 at *5; *accord Le Clair v. Reiter*, 233 Mont. 332, 335, 760 P.2d 740, 742 (1988). As will be seen, we later rejected the voluntary/involuntary distinction as an element of mootness analysis. But the critical point to be taken from these post-*Henke* decisions is that this Court returned to the fundamental principle that a defeated party's compliance with the judgment renders the appeal moot *only where the compliance makes the granting of effective relief by the appellate court impossible*. *Bank of Roundup*, 167 Mont. at 432-33, 539 P.2d at 724 (citing *Begeman*, 10 Mont. 369, 25 P. 1045).

¶37 Lastly, one other aspect of *Henke* must be noted. In its brief discussion of *Black's Estate* and *Hagerty*, the Court opined that we "appeared to have set up [in *Hagerty*] a

---

[2] In adopting this rule, we overruled "anything to the contrary in *Henke* or other cases." *Bank in Eureka*, 1986 Mont. LEXIS 979 at *5. We note here that the "other cases" include *Leonard v. Western*, 74 Mont. 513, 522, 241 P. 523, 527 (1925), *Paulich v. Republic Coal Co.*, 97 Mont. 224, 228, 33 P.2d 514, 515 (1934), *Gallatin Trust & Sav. Bank v. Foster*, 154 Mont. 185, 191, 461 P.2d 452, 455 (1969), *Dahl v. Petroleum Geophysical Co.*, 194 Mont. 294, 296, 632 P.2d 1136, 1137 (1981), and *First Sec. Bank of Kalispell v. Income Props., Inc.*, 208 Mont. 121, 126-27, 675 P.2d 982, 985 (1984), each of which recited some version of the dictum from *Black's Estate*. A categorical rule that "when a judgment is satisfied, it passes beyond review" is simply incorrect.

23

new rule to the effect that where rights of third persons are involved and the parties cannot be restored to their original position the appeal becomes moot." *Henke*, 154 Mont. at 177, 461 P.2d at 451-52. This dictum in *Henke*—which has worked its way into subsequent cases—is not entirely accurate. First, the question is not merely whether the parties can be restored to their original positions, but whether it is possible for this Court to grant effective relief. In some situations, the only effective relief would be to restore the parties to their original positions, and if that is no longer possible, then the appeal is moot. *See e.g. Hauswirth*, 90 Mont. at 26-27, 300 P. at 198 (since the Butte city council and mayor had already enacted the ordinance permitting Montana Power Company to supply natural gas, the appeal was moot); *Povsha v. City of Billings*, 2007 MT 353, ¶¶ 22-24, 340 Mont. 346, 174 P.3d 515 (because the City had long ago granted the zoning change at issue, and Big Sky Auto Auction had already been built adjacent to Povsha's property, the appeal was moot). As explained above, however, relief may also take the form of restitution as necessary to avoid unjust enrichment—rather than a literal return of the parties to their starting positions—in which case it would be possible to grant effective relief. Second, as *Hagerty* reflects, third-party interests may bear on this issue. In *Hagerty*, the beer and liquor licenses had been issued to parties who then acted upon them to create going businesses, and it was not possible for this Court to "effect restitution" upon a reversal of the district court's writ. 130 Mont. at 557-58, 304 P.2d at 920. Yet, while third parties (as bona fide payees and purchasers) may be free from restitution claims, the appellant who obtains a reversal of the lower court's judgment may have a claim in restitution against the appellee. *See* ¶ 23, *supra*. In those situations, as

24

noted, this Court may grant effective relief. Thus, it was wrong to suggest in *Henke* that the involvement of third-party interests and the inability to restore the parties to their original positions necessarily moots an appeal. Again, the question, more accurately stated, is whether it is possible to grant some form of effective relief to the appellant.

## C. *Martin* Factors; Clarification of Mootness Versus Waiver

¶38    We now come to *Martin Dev. Co. v. Keeney Constr. Co.*, 216 Mont. 212, 703 P.2d 143 (1985), which presents the most analogous circumstances to the present case. There, the district court entered judgment in favor of Martin for $72,000: $40,000 in lost profits, $20,000 in attorney's fees, and $12,000 in interest. Peschel, the appellant, did not take any action to stay execution of the judgment, and the judgment was thereafter satisfied. For this reason, Martin argued (like Stuivenga does here) that the appeal was moot. This Court disagreed. While acknowledging some apparent "confusion" in our caselaw, we concluded that the basic rule on mootness was stated best in *Bank of Roundup*: payment of a money judgment by the judgment debtor does not, by itself, render the cause moot for purposes of appeal; a defeated party's compliance with the judgment renders his appeal moot only where the compliance makes the granting of effective relief by the appellate court impossible. *Martin*, 216 Mont. at 218-19, 703 P.2d at 147 (citing *Bank of Roundup*, 167 Mont. at 432, 539 P.2d at 724). Martin had relied on *Henke* and *First Sec. Bank of Kalispell v. Income Props., Inc.*, 208 Mont. 121, 675 P.2d 982 (1984), but we found these cases distinguishable. In *Bank of Kalispell*, the defendants had surrendered real property pursuant to the lower court's order, and this Court accordingly dismissed their appeal as moot because we were not able to render the relief the defendants sought.

25

In *Henke*, various changes of position had occurred in the course of satisfying the judgment which would have made it very difficult, if not impossible, for this Court to reverse. In contrast, "[n]o property changed hands pursuant to the judgment" in *Martin* and there were no "third party interests involved"; rather, "a simple money judgment was satisfied." 216 Mont. at 220, 703 P.2d at 148. Thus, we held that there was "no reason" why this Court could not grant effective relief. *Martin*, 216 Mont. at 220, 703 P.2d at 148. Though not citing the *Restatement*, we implicitly recognized Peschel's entitlement to restitution of the amounts that had been improperly paid to Martin in satisfaction of the judgment (the $20,000 in attorney's fees and the $12,000 in interest).

¶39 The last significant clarification in this line of cases occurred in *Turner v. Mt. Engg. & Constr.*, 276 Mont. 55, 915 P.2d 799 (1996). There, we noted that "confusion" had arisen from this Court's attempt to distinguish between voluntary and involuntary compliance with a judgment within the context of analyzing mootness. *See Turner*, 276 Mont. at 59, 915 P.2d at 802 (citing cases). We explained that voluntariness bears on the question whether the appellant has waived his or her right of appeal, but has no bearing on the question of mootness. *Turner*, 276 Mont. at 59-60, 915 P.2d at 802. The fact that the appellant has voluntarily complied with the judgment does not necessarily mean the appeal is moot. Likewise, the fact that the appellant has involuntarily complied with the judgment does not necessarily mean the appeal is still "live." Rather, in deciding whether the appeal is moot, the issue is "whether this Court can fashion effective relief." *Turner*, 276 Mont. at 61, 915 P.2d at 803. Separate and distinct from this issue is the question of waiver. Voluntary compliance with the judgment may result in a waiver of the right to

appeal—in which case it would be unnecessary to address the question of mootness. *Turner*, 276 Mont. at 61, 64, 915 P.2d at 803, 805; *see also H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, ¶ 19, 301 Mont. 34, 8 P.3d 95 ("The general rule is that a litigant who voluntarily and with knowledge of all the material facts accepts the benefits of an order, decree, or judgment of court, cannot afterward take or prosecute an appeal to reverse it."). This is what occurred in *Black's Estate*. Conversely, where compliance is involuntary, the party cannot be deemed to have waived or acquiesced in the judgment such that an appeal would be precluded. *Turner*, 276 Mont. at 61, 64, 915 P.2d at 803, 805; *see also e.g. Kennedy v. Dawson*, 1999 MT 265, ¶¶ 30-33, 296 Mont. 430, 989 P.2d 390. The appeal may, however, be moot to the extent that this Court cannot grant any effective relief, as occurred in *Hagerty*.

¶40 The *Turner* Court criticized some of our prior decisions for "fail[ing] to analyze the question of what, if any, relief could be fashioned in the event of a reversal." 276 Mont. at 62, 915 P.2d at 803. The *Turner* Court itself, however, failed to provide a complete analysis of this question. The underlying dispute in the case was between a mortgagee (Turner) and construction lien creditors who had performed work on the subject property. The district court determined that Turner's mortgages were valid and superior to the construction liens and entered a decree of foreclosure and order of sale. The lien creditors filed a notice of appeal but did not stay the foreclosure sale or post a supersedeas bond. A sheriff's sale was held to satisfy the outstanding mortgages, and Turner purchased the property. *Turner*, 276 Mont. at 58, 915 P.2d at 801. On appeal, this Court identified two "factors" as dispositive of the mootness issue: whether property

27

has changed hands, and whether third party interests are involved. *Turner*, 276 Mont. at 63, 915 P.2d at 804 (citing *Martin*, 216 Mont. at 219-20, 703 P.2d at 147-48). Here, the Court observed, "the subject property has been sold at a sheriff's sale and third party interests, albeit Turner's, are involved." *Turner*, 276 Mont. at 63, 915 P.2d at 804. The Court posited that because the lien creditors had not posted a supersedeas bond or stayed the foreclosure sale pending appeal, and because no surplus had been recovered at the sale, it was "impossible" for this Court to grant effective relief.[3] *Turner*, 276 Mont. at 63, 915 P.2d at 804.

¶41 Stuivenga engages in the same sort of analysis in the present case. He reasons that because Evans did not post a supersedeas bond or stay disbursement of the interpleaded funds, and because Stuivenga has since paid those funds to third parties, it is impossible for this Court to grant effective relief. The flaw in this analysis is that it fails to account for the possibility of a restitution claim. This Court in *Hagerty*—to which the "third party interests" factor may be traced—made a specific point of noting that it could not "effect restitution" upon a reversal of the district court's writ in that case. 130 Mont. at 558, 304 P.2d at 920. The *Hagerty* Court distinguished *Kurth*, where we held that "if [the

---

[3] As discussed above, the two "factors" relied on in *Turner* were first identified in *Martin* merely as factual distinctions between the *Martin* case and two other cases (*Bank of Kalispell* and *Henke*). *See Martin*, 216 Mont. at 219-20, 703 P.2d at 147-48. *Martin* did not hold that these factors are controlling on the issue of mootness. Unfortunately, however, as a result of the analysis in *Turner*, they have taken on an elevated status. *See e.g. In re Marriage of Gorton*, 2008 MT 123, ¶ 17, 342 Mont. 537, 182 P.3d 746 ("Relying primarily on *Turner* . . . , Tom asserts this Court determines whether effective relief may be granted by analyzing whether property has changed hands and whether third party interests are involved."); *Graveyard Creek Ranch, Inc. v. Bell*, 2005 MT 172, ¶ 14, 327 Mont. 491, 116 P.3d 779 ("As in *Turner*, relevant property has changed hands and third-party interests, in fact multiple third-party interests, are involved.").

28

appellant] is entitled to a reversal of the judgment," then "[w]e may exercise the right of compelling restitution by our own mandate or direct the lower court to do so." *Kurth*, 96 Mont. at 612-13, 32 P.2d at 16; *see also Hagerty*, 130 Mont. at 558, 304 P.2d at 920. The *Turner* Court, in contrast, did not analyze whether, upon a reversal of the judgment, the lien creditors would have "a claim in restitution as necessary to avoid unjust enrichment." *Restatement (Third) of Restitution and Unjust Enrichment* § 18; *see also Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. f (discussing the rights of purchasers at execution sales); *cf. Marriage of Gorton*, ¶ 18 (reasoning that although the real estate had already been sold to a third party, "the basic question in analyzing mootness is whether effective relief could be granted," and "[i]f we were to conclude the [parties'] agreement is unconscionable or invalid, we would remand to the District Court to fashion a remedy which could involve payment from the sale proceeds or other adjustments").[4] Stuivenga, likewise, overlooks the fact that Evans may be entitled to restitution upon a reversal of the judgment in this case.

### D. Synopsis of Rules

¶42 We have considered the "property changed hands" and "third party interests" factors in a handful of cases subsequent to *Turner*. *See e.g. Graveyard Creek*, ¶¶ 13-15;

---

[4] As *Marriage of Gorton* and the *Restatement* reflect, the fact that property has changed hands is not dispositive, since the prevailing appellant may instead be entitled to the proceeds from the sale under an unjust enrichment theory. Notably, the "property changed hands" factor traces back to *Bank of Kalispell*, where this Court dismissed an appeal as moot on the rationale that "[b]y paying damages or surrendering property due under a judgment, a party effectively accedes to the correctness of that judgment, and it passes beyond this Court's power to review." 208 Mont. at 126-27, 675 P.2d at 985. Ironically, the notion of "acceding to the correctness of the judgment" reflects the waiver principles that *Turner* was endeavoring to *separate out* from mootness analysis.

*Mills v. Alta Vista Ranch, LLC*, 2008 MT 214, ¶ 22, 344 Mont. 212, 187 P.3d 627; *In re Marriage of Dahm*, 2006 MT 230, ¶¶ 36-37, 333 Mont. 453, 143 P.3d 432; *In re Marriage of Caras*, 2012 MT 25, ¶ 10 n. 1, 364 Mont. 32, 270 P.3d 48. Without calling into question the validity of these decisions, which were decided on their particular facts, it is necessary nonetheless, in light of the above discussion, to clarify this jurisprudence.

¶43 First, to dispel any further confusion on the point, we reject the categorical rule recited in *Black's Estate*, *Henke*, and the cases listed at ¶ 36 n. 2, *supra*, that when a judgment has been satisfied, it passes beyond review, the satisfaction of it being the end of the proceeding. A party might waive the right to appeal by voluntarily complying with the judgment or by accepting benefits under it. But compliance with the judgment, whether voluntary or involuntary, does not necessarily, in and of itself, render an appeal moot (or not moot). The question of mootness is whether this Court can grant effective relief, which will depend on the specific factual and procedural circumstances of the particular case and the relief sought by the appellant.

¶44 Second, the fact that property has changed hands and third-party interests are involved does not necessarily, in and of itself, render an appeal moot. If the appellant is requesting that the parties be restored to their original pre-judgment positions, the fact that property has already changed hands and third-party interests are now involved may make this impossible, in which case the appeal will be deemed moot. But if the appellant, upon reversal, will have "a claim in restitution as necessary to avoid unjust enrichment," *see* ¶ 21, *supra*, then effective relief can be granted and the appeal is not moot.

## IV.  Stay of Execution; Supersedeas Bond

¶45　Lastly, it is necessary to address the significance of Evans' failure to request a stay or post a supersedeas bond.  The Montana Rules of Appellate Procedure do not require an appellant to seek a stay of execution.  *See Kennedy*, ¶ 34; M. R. App. P. 7 (prior to 2007) (a party "may" apply for a stay); M. R. App. P. 22 (2007 to present) ("[i]f the appellant desires a stay").  The failure to post a supersedeas bond "does not affect the right to an appeal," *Allers v. Willis*, 197 Mont. 499, 508, 643 P.2d 592, 597 (1982), and compliance with the judgment "does not necessarily render the appeal moot," *Turner*, 276 Mont. at 61, 915 P.2d at 803.  Nevertheless, this Court has noted on several occasions that failure to post a supersedeas bond "makes the rights of the parties subject to execution, subsequent satisfaction of the judgment and *possible* mootness so far as appeals are concerned." *Henke*, 154 Mont. at 177, 461 P.2d at 451 (emphasis added); *accord Niles v. Carbon County*, 174 Mont. 20, 22, 568 P.2d 524, 525 (1977); *Erdman v. C & C Sales, Inc.*, 176 Mont. 177, 183-84, 577 P.2d 55, 58 (1978); *Moore v. Hardy*, 230 Mont. 158, 162, 748 P.2d 477, 480 (1988).  Several of the cases discussed above reflect this fact.  Consequently, while a party is not *required* to seek a stay of execution, "a party choosing not to seek such a stay *runs the risk* of having his appeal become moot." *Kennedy*, ¶ 34 (emphasis added); *see also Turner*, 276 Mont. at 60, 915 P.2d at 803 ("A party may not claim an exception to the mootness doctrine where the case has become moot through that party's own failure to seek a stay of the judgment.").

¶46　With regard to the present case, the *Restatement* explains that while it is often possible to postpone compliance with an adverse judgment—by a bonding procedure or

31

otherwise—pending a challenge by direct appeal or in collateral proceedings, "the failure to obtain or even to seek interim relief from the judgment is not a bar to subsequent restitution." *Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmts. a, c; *see also Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006) ("A judgment debtor who is unable or is unwilling to post a supersedeas bond retains the right to appeal even if the judgment is executed. Should the judgment be reversed on appeal, a district court may, on motion or sua sponte, order the judgment creditor to restore the benefits obtained." (citation omitted)). One of the underlying rationales for this rule is that any payment made in response to a judgment is treated as a payment made under compulsion. *Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. c. Conversely, a payment by way of compromise and settlement, where the purpose of the agreement is to effect a final resolution between the parties irrespective of the validity or correctness of any prior decrees, is not subject to recovery in restitution unless the agreement of compromise may itself be avoided, on contract principles, for reasons such as fraudulent concealment or invalidating mistake. *Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. c.

## V. Application to Present Case

¶47 Here, the jury rendered a verdict in favor of Stuivenga. The District Court denied Evans' motion for a new trial. Evans did not attempt to stay execution of the judgment, but she also did not enter into an agreement of compromise with Stuivenga. The District Court disbursed the interpleaded $25,000 to Stuivenga. He then used the funds to pay the medical bills he had incurred as a result of the accident. On appeal, Evans seeks a

reversal of the District Court's judgment and a new trial. She indicates that she will seek restitution from Stuivenga if she prevails in the new trial. Under these circumstances, the fact that the monies have passed into the hands of third parties does not render this Court unable to grant effective relief to Evans. This Court may reverse and remand for a new trial, and should Evans prevail on retrial, she will then have a restitution claim against Stuivenga. *See Restatement (Third) of Restitution and Unjust Enrichment* § 18 cmt. g; *Ohio Natl. Life Assur. Corp. v. Langkau*, 353 Fed. Appx. 244, 248 (11th Cir. 2009)[5] ("An appellant's rights to property on deposit in the court registry are not abolished merely because the court has entered judgment and disbursed the property. We conclude from the record that this appeal is not rendered moot by the district court's disbursement of the [interpleaded insurance] proceeds because Clay can recover the proceeds if the court determines on remand that he is the proper recipient of the insurance proceeds." (citation omitted)); *USAA v. Parker*, 200 P.3d 350, 357 (Colo. 2009) ("[P]ayment of a money judgment will not moot an appeal absent agreement to the contrary because the money can be restored to the defendant in the event of a judgment in its favor.").

¶48     Stuivenga contends that the interpleaded funds have "changed hands thereby affecting third-party interests." He argues that the medical providers whom he has paid "cannot be restored to the status quo" without imposing an unfair hardship on them. For the reasons discussed, however, it is not necessary to "restore the status quo" in order to

---

[5] Unpublished decisions of other courts (such as *Ohio Natl. Life Assur. Corp.*) may be cited as legal authority to the extent the rules of the rendering court allow. *McDonald v. Dept. of Envtl. Quality*, 2009 MT 209, ¶ 53, 351 Mont. 243, 214 P.3d 749. Under 11th Cir. R. 36-2, unpublished opinions "are not considered binding precedent, but they may be cited as persuasive authority."

grant Evans effective relief. The availability of a restitution claim, should this Court reverse the District Court's judgment and should Evans prevail at a second trial, makes it possible for this Court to grant effective relief. Contrary to Stuivenga's concern, the medical providers need not "pay back the monies and await the results" of further proceedings. Stuivenga also criticizes Evans for not obtaining a stay. But, as stated, the failure to obtain a stay does not, in itself, render an appeal moot.

¶49 In sum, there are no magical "factors" in mootness analysis where the underlying judgment has been satisfied. The only question is whether this Court can grant effective relief, and that will depend on the unique facts, procedural posture, and relief requested in the particular case. If returning the parties to their original positions would be the only effective relief under the circumstances, but doing so is now impossible, then the appeal is moot. But if restitution or some other form of relief would be possible upon a reversal, then the appeal is not moot—even if property has changed hands and third-party interests are involved. Here, the issue presented at the outset of the action (Who was driving?) has not ceased to exist, and Stuivenga's payment of the funds to third parties does not render this Court unable to grant effective relief. This appeal, therefore, is not moot.

¶50 ***Issue 2. Did the District Court manifestly abuse its discretion in denying Evans' motion for a new trial?***

¶51 As for the merits of the appeal, Evans argues that she was denied a fair trial because Stuivenga engaged in "improper argument" during summation. The basis of this claim is that Stuivenga violated the District Court's earlier ruling regarding evidence of DUIs when he referred to the dismissal of the DUI charge arising out of the October 2008

34

accident. (As noted, the Powell County Attorney dismissed this charge with prejudice prior to trial in the instant case.) Evans asserts that Stuivenga's reference to the dismissal was highly prejudicial because she could not rebut the implication that the issue of who was driving had already been resolved by the Powell County Attorney. Evans further contends that, in referring to the dismissal, Stuivenga introduced facts not in evidence.

¶52    As to the first point, Evans is incorrect about the scope of the District Court's ruling. That ruling, quoted above at ¶ 9, pertained specifically to Stuivenga's *prior* DUI convictions. Evans cites an excerpt from the transcript where the trial judge observes that "I've got a commitment from attorneys for Ms. Evans that there will be no further evidence about the DUI in the case." But when this statement is read in context, it is unmistakably clear that the judge was referring to evidence of *prior* DUIs. In fact, the discussion in this portion of the transcript resulted from Stuivenga's objection to Evans' questioning regarding his prior DUI convictions. There was no discussion at this time regarding the *dismissed* DUI charge. As to the second point, the record reflects that there was testimony, by Evans herself on cross-examination, revealing the DUI charge and dismissal. This evidence was not objected to. Thus, Stuivenga did not introduce facts not in evidence.

¶53    When the basis of a motion for a new trial is an irregularity in the proceedings or surprise, we review the denial of the motion for a manifest abuse of discretion. *Styren Farms, Inc. v. Roos*, 2011 MT 299, ¶ 12, 363 Mont. 41, 265 P.3d 1230. A manifest abuse of discretion is one that is obvious, evident, or unmistakable. *Styren Farms*, ¶ 12. Here,

35

we conclude that the District Court did not manifestly abuse its discretion in denying Evans' motion for a new trial.

¶54    Affirmed.

/S/ JAMES C. NELSON


We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BETH BAKER