FILED

April 28 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0085

DA 14-0085

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 113

KARRIE LYNN SERRANIA,

        Plaintiff and Appellant,

    v.

LPH, INC. dba NORTHWEST COLLECTORS,
a Montana Corporation, and DISCOVERY
DENTAL GROUP,

        Defendants and Appellees.


APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DV 12-781
                    Honorable Edward P. McLean, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Terry A. Wallace, Attorney at Law, Missoula, Montana

        For Appellee:

                David J. Steele, II., Geiszler Steele, PC, Missoula, Montana


                           Submitted on Briefs:  March 18, 2015
                                   Decided:  April 28, 2015

Filed:

                                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Karrie Lynn Serrania sued LPH, Inc., and Discovery Dental Group, PLLC (DDG), in the Fourth Judicial District Court, Missoula County, over their attempt to collect a disputed dental bill.  After months of litigation, the District Court entered judgment and sanctions against Serrania and her counsel, Terry Wallace.  Serrania and Wallace appeal. We address the following issues:

*1. Whether the appeal is justiciable.*

*2. Whether the District Court correctly awarded LPH summary judgment on Serrania's Fair Debt Collection Practices Act claim.*

*3. Whether the District Court abused its discretion in sanctioning Wallace.*

¶2    We affirm all aspects of the judgment properly before us, with the exception of one portion of the sanctions.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    In 2009, Serrania went to DDG with a toothache.  She signed a contract before receiving treatment.  The contract states, "Payment of all treatment and services rendered are my responsibility and I agree to pay collection and legal fees if any delinquent balance is placed with an agency or attorney for collection of suit."  The contract also states, "I understand that I am responsible for all costs and dental treatment."

¶4    In July 2011, DDG referred Serrania's account to LPH, a debt collection agency. DDG informed LPH that Serrania owed $1,112.13.  The debt comprised costs for treatment rendered to Serrania, her then-husband, and her son, along with interest on unpaid amounts, and a fee for a bad check.  LPH initiated steps to collect the debt.  LPH

2

mailed Serrania a letter that notified her of the debt and explained that if she did not dispute the debt within thirty days, LPH would presume the debt's validity. After thirty days passed without dispute, LPH mailed Serrania a collections placement letter with charges for additional interest and collection fees. Serrania did not immediately pay the debt, nor did she advise LPH of a dispute within thirty days. A few months later, LPH filed a complaint against her in Missoula County Justice Court, but the complaint was eventually dismissed after Serrania filed counterclaims that exceeded the Justice Court's jurisdiction.

¶5 In July 2012, Serrania sued LPH and DDG in the Fourth Judicial District Court, alleging that LPH violated the Fair Debt Collection Practices Act (FDCPA), that DDG committed credit defamation, and that both violated the Montana Consumer Protection Act. Serrania sought to recover approximately $650,000 in damages. LPH and DDG counterclaimed for breach of contract and unjust enrichment.

¶6 In December 2012 and January 2013, LPH and DDG jointly moved for partial summary judgment on their contract counterclaim, and LPH individually moved for partial summary judgment on Serrania's FDCPA claim. Serrania responded to the joint motion for summary judgment on the contract counterclaim, but failed to respond to LPH's motion on the FDCPA claim.

¶7 On February 27, 2013, the District Court held a pretrial conference. Wallace, Serrania's attorney, failed to attend the conference. On LPH and DDG's motion, the District Court ordered Wallace to pay $1,000 in sanctions each to counsel for LPH and

3

DDG for the unwarned absence. The Court also entered summary judgment against Serrania on the contract and FDCPA claims. In the months that followed, Serrania moved to vacate the sanctions and moved for relief from the FDCPA summary judgment order, referring to that order as an "advisory opinion."

¶8 In May 2013, counsel for LPH and DDG informed Serrania that they would move to dismiss their unjust enrichment counterclaim, as they had pled unjust enrichment in the alternative to their breach of contract counterclaim. Serrania nonetheless filed a motion for summary judgment on the unjust enrichment claim. In an e-mail to opposing counsel, Wallace explained this motion by writing that, "Plaintiff wants judgments against LPH and DDG." LPH and DDG responded by moving to dismiss the unjust enrichment claim, which the District Court did. LPH also moved the court to impose sanctions, arguing that Serrania and Wallace's conduct constituted vexatious litigation.

¶9 In July 2013, DDG moved to compel Serrania to respond to discovery requests asking her to identify the name of her employer, her employment position, and the nature of her job duties. LPH joined the motion. Serrania responded by moving to quash the discovery requests.

¶10 On December 2, 2013, the District Court issued an order resolving a number of outstanding motions and issues, some of which are recounted above, but many of which are not for the sake of brevity. The court's order set a show cause hearing for December 19, 2013, for Wallace to explain why the court should not sanction Serrania and Wallace for their conduct in the course of litigation. After that hearing, on January 7,

4

2014, the court sanctioned Serrania and Wallace in the amount of $42,113.32 to be paid to LPH, and $32,647.94 to be paid to DDG. Additionally, the court sanctioned Wallace $10,000 for "his blatant lack of candor and his disrespectful conduct toward the Court and the legal process and his egregious abuses of the legal rights of the Defendants."

¶11 Serrania underwent bankruptcy after the District Court issued judgment. Her debts resulting from the dental bill and the District Court's orders were discharged. Nonetheless, Serrania now appeals the sanctions orders, as well as the contract and FDCPA summary judgment orders, and Wallace, through Serrania, appeals the sanctions against him.

## STANDARDS OF REVIEW

¶12 Whether an appeal is justiciable is a threshold question that this Court determines before proceeding to the merits. *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 16-17, 364 Mont. 390, 276 P.3d 867. This Court reviews summary judgment orders de novo. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Albert*, ¶ 15. This Court reviews sanctions orders for abuse of discretion. *Johnson v. Booth*, 2008 MT 155, ¶ 13, 343 Mont. 268, 184 P.3d 289.

## DISCUSSION

¶13 *1. Whether Serrania's appeal is justiciable.*

5

¶14 The judicial power of Montana's courts encompasses only live controversies. *Stuivenga*, ¶ 17. An appeal is moot and non-justiciable when "an intervening event or change in circumstances" renders this Court unable "to grant effective relief or to restore the parties to their original position." *Stuivenga*, ¶ 17.

¶15 LPH argues that a change in circumstances has mooted Serrania's appeal. Specifically, in October 2014, a United States Bankruptcy Court discharged the District Court's judgments against Serrania. Thus, the sanctions and contract judgments no longer may be collected against Serrania. Because this Court cannot grant effective relief to Serrania with respect to appeals on those issues, those appeals are moot.

¶16 By contrast, it appears that the bankruptcy trustee abandoned Serrania's FDCPA claim against LPH. Serrania possesses that claim and stands to benefit if this Court were to reverse the District Court on it. Serrania's appeal of the District Court's summary judgment order on her FDCPA claim is live, and we will examine its merits.

¶17 Finally, while Serrania no longer has an interest in the sanctions orders, Wallace does. The general rule is that only a party to a case has standing to appeal an adverse judgment in the case. *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S. Ct. 586, 587 (1988) ("The rule that only parties to a lawsuit . . . may appeal an adverse judgment is well settled."). Courts recognize an exception to this rule, however, for a party's attorney who has been sanctioned and seeks to appeal those sanctions. *Nisus Corp. v. Perma-Chink Sys., Inc.*, 497 F.3d 1316, 1319 (Fed. Cir. 2007) ("As an exception to [the] general rule, a nonparty such as an attorney who is held in contempt or otherwise sanctioned by the

6

court in the course of litigation may appeal from the order imposing sanctions . . . ."); *Bartels v. Sports Arena Emps. Local 137*, 838 F.2d 101, 104 (3rd Cir. 1988) ("[T]here is no doubt at all but that at some point an attorney subject to sanction may appeal."). Indeed, in *In re Estate of Bayers*, 2001 MT 49, 304 Mont. 296, 21 P.3d 3, an attorney representing a party appealed sanctions that were entered against him, and we reviewed that appeal. *Bayers*, ¶¶ 1-2. Like the attorney in *Bayers*, Wallace has an interest in overturning the sanctions entered against him. Accordingly, we will review the merits of the sanctions against him.

¶18 *2. Whether the District Court correctly awarded LPH summary judgment on the FDCPA claim.*

¶19 The FDCPA prohibits a debt collector from collecting a debt through "any false, deceptive, or misleading representation or means," 15 U.S.C. § 1692e, or through "unfair or unconscionable means," 15 U.S.C. § 1692f. Further, the FDCPA imposes an affirmative duty on a debt collector to, within five days of initial communication with a consumer, inform the consumer that she has thirty days to contest the debt or else the collector will presume that the debt is valid. 15 U.S.C. § 1692g(a). If the consumer disputes the debt within thirty days, the collector must cease collection efforts and take steps to verify the debt. 15 U.S.C. § 1692g(b).

¶20 The District Court granted summary judgment to LPH on Serrania's FDCPA claim because it concluded that: (1) LPH fulfilled its duty to inform Serrania that she must dispute her debt within thirty days or else LPH would presume that the debt was valid; (2) Serrania did not dispute the debt; and (3) Serrania's failure to dispute the debt

7

within the thirty days barred her from asserting FDCPA claims that revolve around the debt's invalidity.

¶21 In ruling that Serrania's failure to dispute the debt barred her claims that LPH violated the FDCPA through misrepresenting that debt, the District Court relied heavily on two United States District Court cases. *See Palmer v. I.C. Sys., Inc.*, No. C-04-03237, 2005 U.S. Dist. LEXIS 27946 (N.D. Cal. Nov. 8, 2005); *Bleich v. Revenue Maximization Group*, 233 F. Supp. 2d 496 (E.D.N.Y. 2002). In both cases, a debt collector communicated an allegedly false debt amount to a debtor, and informed the debtor that she had a right to dispute the debt within thirty days or else it would be presumed valid. The debtor did not take advantage of that right. *Palmer*, 2005 U.S. Dist. LEXIS 27946 at *11; *Bleich*, 233 F. Supp. 2d at 500. In *Bleich*, the district court determined that Congress imposed a duty on debt collectors to inform a debtor of her right to dispute a debt within thirty days "to avoid FDCPA litigation based solely on the debt's validity as communicated by the collection agency to the [debtor]." *Bleich*, 233 F. Supp. at 500. Similarly, in *Palmer*, the district court examined the FDCPA's language and concluded that "where, as here, it is undisputed that the consumer never contacts the collector to contest the debt before the final collection attempt, plaintiff cannot assert a cause of action under the FDCPA solely based upon the debt collector's attempt to collect an invalid debt." *Palmer*, 2005 U.S. Dist. LEXIS 27946 at *15.

¶22 Some months after the District Court entered its summary judgment order, two federal circuit courts examined and rejected the theory espoused in *Palmer* and *Bleich*.

8

In *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3rd Cir. 2014), *cert. denied*, 2014 U.S. Lexis 7516 (Nov. 10, 2014), the Third Circuit held, "[A] consumer is not required to seek validation of a debt he or she believes is inaccurately described in a debt communication as a prerequisite to filing suit under § 1692e." *McLaughlin*, 756 F.3d at 248. The court noted that the FDCPA's "text provides no indication that Congress intended to require debtors to dispute their debts under § 1692g before filing suit under § 1692e, and in fact, the statutory language suggests the opposite." *McLaughlin*, 756 F.3d at 247. The court further noted that holding that a debtor forfeits her FDCPA claim by failing to quickly dispute a debt undermines the FDCPA's purpose as a remedial statute, aimed at protecting "unsophisticated debtors, who have no reason to suspect that they would be prevented from filing suit concerning deceptive communications as a consequence of failing to invoke the optional statutory validation procedure." *McLaughlin*, 756 F.3d at 247-48. Also, such a holding would "immunize false statements," undermining the "FDCPA's goal of ensuring debt collectors act responsibly." *McLaughlin*, 756 F.3d at 248. Finally, the court noted that the debt validation procedure still serves a purpose without making it a prerequisite to suit because "it can enable debtors to cheaply and quickly resolve disputes with debt collectors" and "facilitate[ ] the exchange of information . . . ." *McLaughlin*, 756 F.3d at 248. The Fourth Circuit conducted nearly the same analysis in *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014), before concluding,

> In sum, a pre-suit validation requirement is unfounded in the text of the
> statute, contrary to the remedial nature of the FDCPA, and inconsistent

9

with the FDCPA's legislative purpose of eradicating abusive collection practices. We therefore hold that a debtor is not required to dispute his or her debt pursuant to § 1692g as a condition to filing suit under § 1692e.

*Russell*, 763 F.3d at 394.

¶23 Although neither party cited *McLaughlin* or *Russell* in their briefs on appeal, we are persuaded by the rulings of the Third and Fourth Circuits. While there is logic behind requiring a party to attempt to resolve a debt dispute outside of court before filing suit, the FDCPA simply does not impose that requirement. And, as the circuit courts observed, such a requirement undermines the FDCPA's purposes. Therefore, we conclude that the District Court relied on incorrect reasoning in granting summary judgment to LPH on the FDCPA claim.

¶24 Nonetheless, we uphold court orders that reach the correct result. *State v. Reim*, 2014 MT 108, ¶ 26, 374 Mont. 487, 323 P.3d 880. In this case, one alternative ground that would entitle LPH to summary judgment on the FDCPA claim would be if LPH did not in fact attempt to collect a debt from Serrania through "any false, deceptive, or misleading representation or means," 15 U.S.C. § 1692e, or through any "unfair or unconscionable means," 15 U.S.C. § 1692f. Serrania alleges that LPH misrepresented her debt amount. Misrepresentation of a debt violates the FDCPA's prohibition on attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1); *see also* 15 U.S.C. § 1692e(2)(B) (prohibiting the false representation of "any services rendered or

10

compensation which may be lawfully received by any debt collector for the collection of a debt."). The question becomes whether the debt that LPH represented to Serrania was "authorized by agreement . . . or permitted by law." 15 U.S.C. § 1692f(1).

¶25 Serrania disputes the validity of four types of charges that LPH sought to collect from her: (1) charges for services rendered to Serrania's husband and son, (2) interest charges, (3) a non-sufficient funds fee for a bad check, and (4) collections costs and attorney fees for collecting Serrania's debt. Turning to Serrania's contract with LPH, we have no difficulty concluding that it authorizes LPH's attempt to recover collection costs and attorney fees. In the contract, Serrania agreed "to pay collection and legal fees if any delinquent balance is placed with an agency or attorney for collection or suit." The contract, however, does not appear to authorize any of the other charges that Serrania disputes. We thus turn to whether the law permits these charges.

¶26 Serrania disputes the validity of billing her for treatment provided to her child and then-husband. Section 40-2-106, MCA, provides:

> A husband or wife, solely on the basis of being a spouse, is not . . . liable for the debts contracted by the other spouse, except that the expenses for necessities of the family . . . are chargeable upon the property of both the husband and wife . . . [and] the husband and wife may be sued jointly and separately.

Section 40-2-210, MCA, further specifies that necessities include services that are "reasonably required to provide for the health . . . of the married person, the person's spouse, and minor children . . . ." These provisions make a person liable for the medical expenses of her spouse and child. *See Missoula YMCA v. Bard*, 1999 MT 177, ¶¶ 13-15,

11

295 Mont. 260, 983 P.2d 933. Accordingly, these provisions permitted LPH to represent Serrania's debt as encompassing expenses related to dental services provided to her husband and child.

¶27 Serrania also disputes the validity of adding interest to her debt. Section 31-1-106(1)(b), MCA, however, authorizes interest "on all money at a rate of 10% a year after it becomes due on . . . an account stated[.]" Serrania had accounts with DDG, and DDG charged interest on those accounts when they were ninety days past due, in compliance with § 31-1-106, MCA. LPH did not misrepresent Serrania's debt by including interest in the represented debt amount.

¶28 Finally, Serrania disputes the validity of a non-sufficient funds fee that was added to her debt after she passed a bad check. But this fee is authorized by § 27-1-717(1)(a), MCA, which states, "A person who issues a check . . . for the payment of money is liable for a service charge . . . or for damages . . . if the check . . . is . . . dishonored for lack of funds . . . ." LPH did not misrepresent Serrania's debt by including this fee in the represented debt amount.

¶29 There is no dispute of material fact about the debt that LPH sought to collect. The fees and charges subsumed within the debt were either authorized by Serrania's contract or permitted under the law. LPH thus is entitled to judgment on Serrania's FDCPA claim, albeit on a different ground than that on which District Court relied. We affirm the District Court's summary judgment order on the FDCPA claim.

12

¶30    *3. Whether the District Court abused its discretion in sanctioning Wallace.*

¶31    Wallace challenges a number of sanctions imposed against him. The first sanction derives from Wallace's failure to attend the February 2013 scheduling conference. The District Court sanctioned Wallace under M. R. Civ. P. 16(f) for his absence. That rule provides that a court "may issue any just orders . . . if a party or its attorney . . . fails to appear at a scheduling or other pretrial conference." M. R. Civ. P. 16(f)(1)(A). Further, "instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay reasonable expenses – including attorney fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." M. R. Civ. P. 16(f)(2).

¶32    Wallace suggests that sanctioning him for missing the conference was unjust because he missed the conference due to illness. But this excuse does not explain why Wallace could not have provided notice to the court or opposing counsel that he would not be able to attend the conference before it occurred. Wallace also argues that sanctions for missing a scheduling conference are justified only if there is a showing of bad faith or prejudice, citing *Watson v. West*, 2009 MT 342, ¶¶ 29, 31, 353 Mont. 120, 218 P.3d 1227. To the extent that *Watson* requires a finding of prejudice, the District Court had the ability to find it—LPH and DDG were forced to prepare for a conference that they otherwise would not have had to if Wallace properly had alerted them that he could not attend. The District Court was in a better position to determine whether Wallace's unwarned absence from the conference justified imposing sanctions, and the

13

court did not abuse its discretion by making that determination. *See McKenzie v. Sheeler*, 285 Mont. 500, 506, 949 P.2d 1168, 1172 (1997) ("[T]he trial court is in the best position to know whether the parties are disregarding the rights of opposing parties in the course of litigation and which sanctions for such conduct are most appropriate.").

¶33 The second sanction that Wallace contests derives from Serrania's refusal to respond to discovery requests asking her to disclose her current employer, her employment position, and the nature of her job duties. These requests are relevant to Serrania's credit defamation claim and to damages in Serrania's FDCPA claim. M. R. Civ. P. 37(c)(1)(a) provides that if a party "fails to provide information requested in accordance with these rules," a court "may order the payment of reasonable expenses, including attorney fees, caused by the failure." The District Court concluded that Serrania failed to provide information in accordance with M. R. Civ. P. 37 and ordered Serrania to pay expenses that were attributable to that failure. We cannot conclude that this was an abuse of discretion.

¶34 Wallace contests the two remaining sets of sanctions primarily on procedural grounds. In its December 2, 2013 order, the District Court granted LPH's motion for M. R. Civ. P. 11 sanctions, ordering Wallace to show cause why the court "should not sanction the Plaintiff" and "award the Defendants the full amount of the balance owed under the contract, and the Defendant's debt collection fees, and attorney's fees and costs." At the show cause hearing, Wallace pointed out that M. R. Civ. P. 11(c)(2) requires that a motion for sanctions "be made separately from any other motion," and that

14

LPH violated that requirement by moving for sanctions under M. R. Civ. P. 11, § 37-61-421, MCA, and 15 U.S.C. § 1692k, all in the same motion. The District Court responded by restyling its show cause hearing on sanctions as initiated *sua sponte* rather than on LPH's motion. After the show cause hearing, the District Court ordered Serrania and Wallace jointly to pay $24,797.24 to DDG and $41,113.32 to LPH as sanctions under M. R. Civ. P. 11(c). The District Court also ordered Wallace individually to pay $10,000 to the Missoula County Clerk of Court's Office for his "blatant lack of candor and his disrespectful conduct toward the Court and the legal process and his egregious abuses of the legal rights of the Defendants."

¶35 On appeal, Wallace restates his argument about the District Court not complying with the process for imposing M. R. Civ. P. 11 sanctions. These arguments have merit. But M. R. Civ. P. 61 directs, "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." On appeal, Wallace simply has not explained how the procedural problems with the M. R. Civ. P. 11 sanctions affected his substantial rights. Wallace was on notice that he might receive sanctions for his conduct, and he knew that when he attended the show cause hearing.

¶36 Review of the record also reveals that the District Court did not abuse its discretion by sanctioning Wallace $10,000 for his "blatant lack of candor and his disrespectful conduct toward the Court and the legal process and his egregious abuses of the legal rights of the Defendants." The District Court found that Wallace was "primarily responsible for causing this case to unreasonably grow beyond the legal issues and

15

damages pled in Plaintiff's Complaint and the Defendant's respective Answers and Counterclaims, and for ignoring and denying the legal effects of this Court's ruling in its March 14, 2013 [summary judgment order]." The District Court was in the best position to make these findings, and the findings justify the sanction. *See McKenzie*, 285 Mont. at 506, 949 P.2d at 1172. Wallace has not demonstrated clear error in the court's findings in this regard.

¶37 On the basis of the current record, however, we cannot affirm the District Court's order for Serrania and Wallace jointly to pay $24,797.24 to DDG and $41,113.32 to LPH. The District Court based these sanctions in part on the "filing of this frivolous law suit in the first place." But, given this Court's implicit conclusion earlier in this opinion that Serrania's FDCPA claim had some grounding in the law—albeit not enough to withstand summary judgment—this suit does not appear entirely frivolous. We cannot conclude that the District Court appropriately ordered Serrania and Wallace jointly to pay $24,797.24 to DDG and $41,113.32 to LPH based on the stated findings.

## CONCLUSION

¶38 We affirm all the appealed orders, with the exception of the District Court's order that Serrania and Wallace jointly pay $24,797.24 to DDG and $41,113.32 to LPH. That sanctions order is vacated and remanded for reconsideration in light of this opinion.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE