FILED

05/26/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0626

DA 18-0626

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 133N

IN RE THE PARENTING OF K.R.C.W.,

DANIEL W. PERRY,

   Petitioner and Appellant,

 and

KRISTYN M. PLILEY,

   Respondent and Appellee.

APPEAL FROM: District Court of the Seventeenth Judicial District,
      In and For the County of Valley, Cause No. DR-2016-43
      Honorable Yvonne Laird, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Jami L. Prins, Attorney at Law, Arlee, Montana

   For Appellee:

   Jason M. Scott, P. Mars Scott Law Office, Missoula, Montana

          Submitted on Briefs: May 6, 2020

              Decided: May 26, 2020

Filed:

         _____
              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Daniel Perry appeals the Seventeenth Judicial District Court's order amending the parties' parenting plan to provide primary residential custody of his now twelve-year-old child K.R.C.W. with Kristyn Pliley. We affirm.

¶3 From the time K.R.C.W. was born to Daniel and Kristyn until age seven, he resided with Kristyn in Glasgow.[1] At that time, he went to live with Daniel in Miles City because of Kristyn's drug use. Kristyn entered and completed drug treatment. The District Court entered a parenting plan in February 2017 providing that K.R.C.W. would reside primarily with Daniel during the school year and with Kristyn one weekend per month and during the summer. Kristyn moved to amend the parenting plan in March 2018. The District Court held a hearing in May at which both parties appeared without counsel. Each gave testimony, and the court asked questions.[2] The District Court entered an order a week later, making findings of fact from the parties' testimony. The court noted Kristyn's concerns

---

[1] Kristyn and her family reside in St. Marie. K.R.C.W. would attend school in Glasgow, and the District Court referred to Kristyn's home as "Glasgow" for purposes of its rulings. We do the same.

[2] Although the Valley County Clerk of District Court made an extensive minute entry of the May 21, 2018 hearing, there is no transcript of the hearing in the appellate record.

about K.R.C.W.'s behavioral issues and that Daniel was looking at a move to Billings for a better job opportunity. The court mentioned Kristyn's concern about allegations regarding a child sexual assault committed by another child in Daniel's home, found that no evidence "[o]ther than Kristyn's assertions, based on hearsay," was presented on the point, and noted that Daniel disputed the allegation.

¶4 Based on the evidence presented, the District Court ordered that K.R.C.W. would finish school in Miles City and then spend the summer with Kristyn as reflected in the parenting plan. In the meantime, it directed that an assessment evaluation be done, with Youth Dynamics, Inc., if possible, "with an emphasis on [K.R.C.W.'s] parenting arrangements and educational needs" and to "determine [his] needs and wants . . . with a focus on his primary residential location." The court ordered that the evaluation be completed by mid-July.

¶5 Daniel filed his Notice of Intent to Move to Billings on July 9, 2018. Youth Dynamics completed an extensive assessment and filed it with the District Court as directed. The assessment reported the evaluator's discussions with K.R.C.W. and with both parents and included reports of the child's psychological testing. The evaluation noted that K.R.C.W. valued and should have time with both parents but wanted to live with his mother in Glasgow. The District Court convened a second hearing on August 6, 2018.

¶6 Both parties represented themselves at the hearing on Kristyn's motion. The court questioned each of them. It rejected Kristyn's attempt to introduce into evidence a letter containing allegations that the son of Daniel's domestic partner had sexually assaulted a young boy. But the court did allow Kristyn to testify that she had concerns about it because

3

Daniel did not seem to have taken the allegations seriously. And the District Court also questioned Daniel about it. He said he was "pretty sure" his fiancée was aware of the allegations against her son, but that he had no direct knowledge of the specifics. Daniel testified that there had been no charges filed, no police reports or investigations, and he wasn't concerned because he sees the boy interact with the other children in his home and has not observed any problems.

¶7 The trial court acknowledged at the hearing that the case presented difficult choices; it expressed concern that Kristyn had experienced a relapse in May 2018, but it was impressed with the steps she is taking to get past her addiction. The court discussed the child's medical condition and its concern that the condition would need careful monitoring. The court commended Daniel that he "really stepped up" when K.R.C.W. needed him, but it also expressed concern about Daniel's apparent lack of concern or follow-up regarding the allegations against the son of his fiancée. The court relied on the report of Youth Dynamics and the evidence that K.R.C.W. had childhood friends and familiarities in Glasgow, whereas Billings would be a complete change for him. The District Court entered an order on August 21, 2018, providing for K.R.C.W. to reside primarily with Kristyn during the school year and awarding Daniel one weekend per month and all summer (except one weekend per month), as well as alternating holidays. We granted Daniel leave to file an out-of-time appeal.

¶8 Daniel argues on appeal that there was no change of circumstances as required by law that would justify modifying the existing parenting plan and that the District Court

erroneously based its decision on Kristyn's hearsay testimony about the purported sexual assault that was nothing more than her unsubstantiated allegation.

¶9 "A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision." *Northcutt v. McLaughlin (In re G.M.N.)*, 2019 MT 18, ¶ 11, 394 Mont. 112, 433 P.3d 715 (citation omitted). This Court does not reweigh conflicting evidence or substitute its judgment for that of the district court; we instead evaluate findings of fact to determine "whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." *In re G.M.N.*, ¶ 11 (citations omitted). Absent clear error, we review a district court's decision regarding a parenting plan for an abuse of discretion. *In re G.M.N.*, ¶ 11. "A demonstration of changed circumstances is a 'prerequisite' to amendment of a parenting plan, and 'a district court may not modify an existing custody arrangement' without such a finding." *Newman v. Newman (In re R.J.N.)*, 2017 MT 249, ¶ 9, 389 Mont. 68, 403 P.3d 675.

¶10 Addressing Daniel's first allegation, we conclude that the District Court found a change in circumstances sufficient to warrant consideration of an amended parenting plan and that its finding was supported by the evidence. After Daniel indicated that he intended to move, the court ordered an evaluation, directing the evaluator to determine K.R.C.W.'s needs and wants "with a focus on his primary residential location." The court directed the assessment to address "if it would be disruptive for K.R.C.W. to move from Miles City, Montana[,] to Billings, Montana[,] or if it would be better to move K.R.C.W. from Miles

City, Montana[,] to Glasgow, Montana." Though the final order did not expressly conclude that "a change ha[d] occurred in the circumstances of the child" as § 40-4-219(1), MCA, requires, the District Court implicitly so found. *See Caplis v. Caplis*, 2004 MT 145, ¶ 32, 321 Mont. 450, 91 P.3d 1282 (citations omitted) (noting that where "findings are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence."). Daniel's move triggered a substantial change in K.R.C.W.'s circumstances because the child would be moving no matter what, either to an entirely new community with his father or back to Glasgow to live with his mother.

¶11 Second, Daniel alleges that the District Court's consideration of Kristyn's hearsay testimony about the alleged sexual assault was error. The court did not admit any documents or allow Kristyn to testify about the assault without "firsthand information." The court did mention its concern that Daniel had not followed up on the allegation. Its findings do not reflect that it relied on Kristyn's hearsay statement, however, and we decline to reverse on that ground. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." M. R. Civ. P. 61; *see Serrania v. LPH, Inc.*, 2015 MT 113, ¶ 35, 379 Mont. 17, 347 P.3d 1237. The District Court heard extensive testimony from both parties at two separate hearings and considered a lengthy evaluation report, covering the entirety of K.R.C.W.'s circumstances, and made its decision from that record.

¶12 At the time of the hearing, K.R.C.W. was residing with Kristyn in Glasgow for the summer. The District Court noted Kristyn's testimony, also reflected in the evaluation,

that he "loves being in Glasgow and has a lot of friends," and that Glasgow was essentially where he had "grown up" and was at home. It also noted concerns she raised about K.R.C.W.'s ability to make friends and to adapt to a bigger school in Billings. The District Court considered Daniel's belief that his son would prosper in Billings because it has more to offer than Glasgow and noted Daniel's testimony that he "understands [Kristyn's] concerns about safety." The court relied on the independent evaluation it ordered and properly considered K.R.C.W.'s wishes in determining his best interests. Section 40-4-212(1)(b), MCA. In the final analysis, the District Court determined: "A ten-year-old boy has been moved around the State and now the parties are asking the Court to make him move again. Regardless of the Court's decision, the child will have to move and switch schools, again. Constant disruption in the child's life is not in his best interests."

¶13 We will not substitute our judgment for the trial court's if the record contains substantial credible evidence to support its decision to amend a parenting plan. *Matter of D.C.N.H.*, 2020 MT 119, ¶ 21, 400 Mont. 59, ___ P.3d ___. "The question is not whether there was sufficient evidence to enable the lower court to reach a different conclusion, but rather whether the conclusion that it did reach is supported by substantial evidence." *Matter of D.C.N.H.*, ¶ 21 (citations omitted). Even without reliance on Kristyn's hearsay testimony, we conclude that the record as a whole contains substantial credible evidence to sustain the District Court's findings, and it did not act arbitrarily or without conscientious exercise of judgment in directing that K.R.C.W. reside primarily with Kristyn during the school year.

7

¶14     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the issue is controlled by the clear application of pertinent standards of review.  On the whole, the District Court's findings of fact are not clearly erroneous.  It did not abuse its discretion in amending the parenting plan, and its order is affirmed.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE